**NOT FOR PUBLICATION**                                   **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
THADDEUS B. KASUBINSKI,                 :
                                        :
            Plaintiff,                  :          Civil Action No. 05-5400
                                        :
      v.                                :          **OPINION**
                                        :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
            Defendant.                  :
_____:

APPEARANCES:

Abraham S. Alter
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
        Attorney for Plaintiff

Christopher J. Christie
United States Attorney
Karla J. Gwinn
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
        Attorneys for Defendant

PISANO, District Judge:

Before the Court is the appeal of Thaddeus B. Kasubinski ("Kasubinski"), pursuant to Title II of the Social Security Act, 42 U.S.C. § 423 (2006), from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and decides the matter without oral argument. *See* Fed. R. Civ. P. 78. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

I.

Kasubinski filed an application for DIB on August 14, 2002, alleging that he became disabled on January 7, 2000 due to gastrointestinal hemorrhage, anemia, fatigue, recurring infection, an enlarged heart, portal hypertension, hammertoe, and a low platelet count. The Social Security Administration denied Kasubinski's claim initially and upon reconsideration. Upon Kasubinski's request, a hearing was held before Administrative Law Judge ("ALJ") Ralph J. Muehlig on January 13, 2004, during which Kasubinski provided testimony. Also present and testifying in his capacity as an impartial medical expert was Dr. Martin Fechner, a board-certified internist. On January 28, 2004, ALJ Muehlig issued a written decision denying Kasubinski's claim, finding that although the medical evidence established that Kasubinski had diverticulitis, anemia, and hypertension, the evidence did not demonstrate that Kasubinski had either a physical or mental impairment that would prevent him from performing his past relevant work.

The Appeals Council, after reviewing newly received evidence and a brief filed on behalf of Kasubinski, denied a request for review on September 23, 2005. Thus, the ALJ's decision

2

represents the Commissioner's final decision on the issue of Kasubinski's request for benefits. In its denial, the Appeals Council noted that although the ALJ had made "several inappropriate remarks" during the hearing (Administrative Record ("R.") at 5), his decision reflected a fair evaluation of the record.  Kasubinski now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.

The standard by which a court must review the Commissioner's decision is whether it is supported by "substantial evidence."  42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The focus of the Court's review in the instant case, however, is on the ALJ's conduct of the administrative hearing rather than the substantive evidence.

In support of his request for remand, Kasubinski claims that the ALJ's conduct during the hearing gives rise to an appearance of prejudice against him.  In *Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984), the Third Circuit held that complaints of bias on the part of an ALJ in a social security disability benefits case may be heard upon judicial review in proceedings under 42 U.S.C. § 405(g).  Therefore, the Court will review Kasubinski's claims of bias, and, for the reasons set forth below, remand the case for a new hearing.  In light of the decision to grant a new hearing, the Court need not reach a conclusion on whether the Commissioner's decision on the merits of the disability claim is supported by the substantial evidence in the record.  *See Hummel*, 736 F.2d at 95 (holding that even if the Commissioner's decision was supported by the

3

substantial evidence, claimant was entitled to have that evidence evaluated by an unbiased

adjudicator).

III.

In *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995), the Third Circuit outlined the law

concerning judicial review of a claim of ALJ bias.  The Social Security Act provides claimants

for disability benefits the right to a hearing in which witnesses may testify and evidence may be

received.  *See* 42 U.S.C. § 405(b)(1).  The hearing should be "understandable to the layman

claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should

be liberal and not strict in tone and operation."  *Richardson*, 402 U.S. at 400-01.  However, the

Third Circuit noted that "[a]lthough the hearing is informal in nature, due process requires that

any hearing afforded claimant be full and fair."  *Ventura*, 55 F.3d at 902 (citing *Richardson*, 402

U.S. at 401-02).

Bias on the part of an ALJ may deprive a claimant of a full and fair hearing, as required

by due process.  *Hummel*, 736 F.2d at 93.  Indeed, because of the absence in the administrative

process of procedural safeguards normally available in judicial proceedings, there is reason for an

even stricter application of the due process requirement that administrative adjudicators be

impartial.  *Id.*  As such, the Social Security Administration has provided regulations enabling a

claim of bias to be brought before the agency in the administrative process, explaining:  "An

administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with

respect to any party or has any interest in the matter pending for decision."  20 C.F.R. §§

404.940, 416.1440 (2006).  A claimant who objects to the presiding ALJ must notify the ALJ of

his or her objection at the earliest possible opportunity, at which time the ALJ will decide

whether to proceed with the hearing or withdraw.  *Id.*  The regulations provide that if the ALJ

does not withdraw, the claimant may, after the hearing, present any objections to the Appeals

Council as reasons why the hearing decision should be revised or a new hearing should held

before another administrative law judge.  *Id.*

    The right to a hearing before an unbiased ALJ is "particularly important because of the

active role played by ALJs in social security cases."  *Ventura*, 55 F.3d at 902; *see Hess v. Sec'y*

*of Health, Educ. and Welfare*, 497 F.2d 837, 840-41 (3d Cir.1974) (explaining the regulations

requiring an ALJ to fully develop the record and the regulations giving an ALJ broad discretion

to do so).  It is incumbent upon an ALJ to develop a full and fair record in social security cases.

*Ventura*, 55 F.3d at 902; *see Smith v. Harris*, 642 F.2d 985, 989 (3d Cir. 1981) (reciting the Third

Circuit's view that an ALJ's findings must be "comprehensive").  "Accordingly, an ALJ must

secure relevant information regarding a claimant's entitlement to social security benefits."

*Ventura*, 33 F.3d at 902 (citing *Hess*, 497 F.2d at 841).  As the Third Circuit reasoned in *Hess*:

> Although the burden is upon the claimant to prove his disability, due regard for the
> beneficent purposes of the legislation requires that a more tolerant standard be used in
> this administrative proceeding than is applicable in a typical suit in a court of record
> where the adversary system prevails.

497 F.2d at 840.  Thus, in reviewing claims of bias, it is important to remember not only that the

ALJ does not sit as an adversary as in typical judicial proceedings, but that the ALJ, in fact, has a

duty to develop a full and fair record.

## IV.

    In the instant case, evidence abounds in the transcript of the administrative hearing that

might suggest a lack of objectivity on the part of ALJ Muehlig.  He began his examination of

Kasubinski by asking routine questions that established the claimant's place of residence, the

reasons he could not continue his job, and the circumstances in which he stopped working.

Within this initial line of questioning, however, was this rather abrupt exchange, which began

after Kasubinski was explaining the closing of the plant in which he had worked:

> Kasubinski:   I worked in – actually it was East Ruther, okay.  Formally it was an
> Anheuser Busch company, and then they sold out to a Dutch company and
> unfortunately, the Dutch never had any holdings in the United States and
> they had a little difficulty keeping it going and it sort of fell apart, and the
> plant closure was in '95.
>
> ALJ:          When was the last time you were arrested in Middlesex County?
>
> Kasubinski:   Pardon?
>
> ALJ:          When was the last time you were arrested in Middlesex County?
>
> Kasubinski:   Arrested?  Never.
>
> ALJ:          Never?  Okay.  All right.  When that plant closed, that was a period of
> time there was a lot of work around. . . .

(R. at 30-31.)  The ALJ then resumed asking questions about the circumstances surrounding

Kasubinski's loss of employment.

   Nowhere in the record is there any mention of Kasubinski ever being arrested in

Middlesex County, or anywhere else for that matter.  Yet the ALJ offered an incredulous

response to Kasubinski's answer that he had never been arrested.  Thus, it appears either that the

ALJ may have had some information suggesting that Kasubinski had in fact been arrested in

Middlesex County or that the ALJ may have had preconceived notions regarding Kasubinski's

history with the law.  Nowhere in the rest of the hearing, or in his decision, or anywhere else in

the record did the ALJ attempt to explain how such an arrest might be relevant, nor why he had

embarked on such a line of questioning.  There is no doubt then, that this line of questioning

presents, at the very least, an appearance of bias.

     The ALJ's conduct in the rest of the hearing corroborates this conclusion.  Soon after

questioning Kasubinski on his arrest record, the ALJ exhibited a similar state of disbelief

regarding Kasubinski's statement that he had stopped his heavy drinking:

| | |
|---|---|
| ALJ: | How much are you drinking now? |
| Kasubinski: | Not much, Your Honor.  I had – |
| ALJ: | How did you change that? |
| Kasubinski: | Pardon? |
| ALJ: | How did that change? |
| Kasubinski: | Why did it change? |
| ALJ: | How did it change, not why.  I know why it changed but how did it change? |
| Kasubinski: | Thanksgiving, two glasses of wine, Christmas – |
| ALJ: | Tell me, how were you able to get rid of the alcohol? |
| Kasubinski: | I stopped because of the platelet count, Your Honor. |
| ALJ: | You decided to stop – |
| Kasubinski: | Yes, Your Honor. |
| ALJ: | – by yourself and you stopped? |
| Kasubinski: | Yes, Your Honor. |
| ALJ: | No help? |
| Kasubinski: | No help whatsoever. |

> ALJ:          Well, whatever you were doing, you've got to try and sell it because that's
>               a miracle.

(R. at 31-32.)  This dialogue demonstrates a level of accusatory skepticism on the part of the ALJ

that further suggests the appearance of bias.

Later in the hearing, the ALJ returned his focus to Kasubinski's alcohol use, prompting

this exchange:

> Kasubinski:  I got a job with a roofing contractor, and I was basically a helper, okay, did
>              all the lugging and carrying and loading the roof and stuff.

> ALJ:         That didn't help your alcohol use, did it?

> Kasubinski:  I didn't drink, Your Honor.

> ALJ:         Well, you've got to be the only roofer I've ever heard of that didn't drink.

> Kasubinski:  I swear, Your Honor.  I'm not saying that I stopped completely.  I mean, I
>              have a glass of wine and – but other than that –

> ALJ:         I mean, everyone you worked with drank, didn't they – all the roofing
>              people?

> Kasubinski:  No, there was no drinking on the job, Your Honor, because, okay, for
>              insurance purposes, it was explained to me –

> ALJ:         I know all that, son.  I'm just trying to tell you, roofers are – I never knew
>              a roofer that didn't drink.  I may be wrong.  I don't think it's changed
>              because I've had a lot of them in here that said the same thing.

(R. at 33-34.)  The fact that Kasubinski felt the need to swear to the judge that he was telling the

truth in order to assuage his doubt, after having taken an oath to testify truthfully, speaks to the

level of disbelief the ALJ expressed during Kasubinski's testimony.  Between the sweeping

generalizations of Kasubinski's trade and the skepticism evinced by the ALJ's repetitive

questioning and insinuating comments, there is a strong suggestion of bias on the part of the ALJ.

Furthermore, the ALJ confronted Kasubinski with disparaging and condescending remarks that reinforce the appearance of bias. For example, after the ALJ asked Kasubinski why he did not procure another job, Kasubinski replied that he had been looking without success. Responding to this, the ALJ remarked to Kasubinski: "You didn't have to look far. They were standing out in the street bringing people in." (R. at 31.) In addition, despite the ALJ's knowledge that the claimant was 56 years old,[1] he repeatedly referred to him as "son." (R. at 33, 38.)

Finally, the ALJ's handling of the medical aspects of the hearing underscores the appearance of bias. Though the ALJ allowed Kasubinski's lawyer a chance to examine his client, the ALJ interjected to the point where his personal musings on the claimant's medical problems became an improper focus of the hearing. This improper focus, in the Court's view, raises a concern that the ALJ did not develop a full and fair record.

The evidence of this improper focus involves the ALJ's unsolicited offers of medical advice regarding Kasubinski's illness. For instance, upon learning that Kasubinski had been

---

[1] Knowing that the claimant was 56 years old was particularly important in this case, because the disability determination involves a lower threshold for claimants aged 55 years or older. *See* 20 C.F.R. § 404.1568. At the time of this hearing, Kasubinski was 56 years old, had a high school education, and most likely had a history of skilled work experience (as defined by 20 C.F.R. § 404.1568(c)). If his impairments limited him to no more than light work, *see* 20 C.F.R. § 404.1567(b), as was determined by both his treating physician (R. at 232) and the state agency physicians (R. at 217), and his skills were non-transferable to light work, then Kasubinski was disabled under the applicable regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06; *see* 20 C.F.R. 404.1568(d)(4) ("If you are of advanced age . . . and you have a severe impairment(s) that limits you to no more than light work, we will . . . decide if you have skills that are transferable to skilled or semiskilled light work."). In this case, however, the ALJ decided against the judgment of the agency physicians and found Kasubinski capable of medium work (R. at 24), so that despite his advanced age, he was found not to be disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.15.

9

having his illness treated by his primary care physician, the ALJ insisted that he see a

gastroenterologist or rectal surgeon.[2]  (R. at 41.)  Indeed, the ALJ even included this medical

advice in his written decision, stating:  "The evidence indicates that the claimant is being

followed by his primary care physician for this condition; however, this claimant needs the

specific attention of a gastroenterologist and/or rectal specialist to improve his overall comfort

level."  (R. at 23.)  Later in the hearing, after Kasubinski detailed the regimen prescribed by his

treating physician, the ALJ interjected:

| | |
|---|---|
| ALJ: | The thing I don't understand for the life of me is why do they let you take laxatives? |
| Kasubinski: | Well – |
| ALJ: | You should never take a laxative.  It's the most ridiculous thing in the world. |
| Kasubinski: | But the iron tablets bind me up. |
| ALJ: | Of course, but there are a lot of ways that you can do that which is not addictive.  I mean, you don't get – |
| Kasubinski: | Well, I don't take a laxative every day, Your Honor. |
| ALJ: | Don't take them at all. |

(R. at 42-43.)  In these instances, the ALJ appears less concerned with ascertaining the extent of

Kasubinski's ailments and developing a full record than with providing his own personal medical

advice.  The ALJ again interjected his own ideas for Kasubinski later in the hearing:

| | |
|---|---|
| ALJ: | I don't understand why – it seems strange to me.  They don't have – they have you on a – do you take a stool softener regularly every day? |

---

[2] The ALJ also insisted twice more during the hearing that Kasubinski should be seeing a gastroenterologist.  (R. at 49-50, 55.)

| | |
|---|---|
| Kasubinski: | No. |
| ALJ: | Why? |
| Kasubinski: | Because I don't get constipated every day. |
| ALJ: | That isn't the point.  You should take it if you have problems.  Do you take fiber?  Do you drink fiber on a regular basis? |
| Kasubinski: | Well, I try to keep a high-fiber diet as much – |
| ALJ: | No, no.  Do you buy it like – |
| Kasubinski: | Right. |
| ALJ: | Take it every day? |
| Kasubinski: | No, I don't Your Honor. |
| ALJ: | Two or three times? |
| Kasubinski: | I don't. |
| ALJ: | You should.  I mean, that's one of my points on this.  If you go to a gastroenterologist, this is what he deals with.  He'll put you on the right diet.  He'll put you – he'll certainly get you away from any laxatives.  I mean, anything harsh is not going to get you back into the system that you're – you have to do things naturally.  To move from where you are to natural is not an easy task but you better get on the road. |

(R. at 49-50.)  Throughout this dialogue, it becomes apparent that the ALJ has preconceived

notions of the severity of Kasubinski's ailments and how they should be alleviated.

Finally, during an exchange with the medical expert, Dr. Fechner, the ALJ demonstrated

the basis from which he derives his conceived expertise on the claimant's illnesses:

| | |
|---|---|
| Attorney: | Well, in terms of his stomach problems, are there things that are precluded because of the diverticulitis? |
| Dr. Fechner: | Oh well, yeah, we mentioned this before.  I think the judge is an expert. |

11

| | |
|---|---|
| ALJ: | Absolutely.  I know all these things – |
| Dr. Fechner: | Maybe from personal experience. |
| ALJ: | Well, and family.  If you live long enough, you've either experienced or had to treat – |
| Dr. Fechner: | I'm going to accede to him at this point. |

(R. at 54.)  Thus, it appears that the ALJ's frequent interjections during the examinations of Kasubinski and Dr. Fechner regarding the claimant's medical history were a product of the ALJ's past family and personal experience.

Furthermore, the focus of the ALJ's questions and comments—on what the ALJ thought the claimant should be doing to ameliorate his condition, rather than on the conditions themselves—leads the Court to question whether the ALJ was interested in developing a full and fair record.  While such an improper focus may not, on its own, preclude the development of a full and fair record, the ALJ's interjections, taken together with his previous remarks regarding the claimant's dubious arrest record and heavy drinking, color the conduct of the administrative hearing with an appearance of bias that cannot be ignored.

In *Rosa v. Bowen*, 677 F. Supp. 782 (D.N.J. 1988), a decision which the Third Circuit deemed "instructive" in *Ventura*, 55 F.3d at 904, the court stated:  "Even where no one error, standing alone, would suffice to set aside an administrator's determination, a large number of errors can have the combined effect of rendering a hearing unfair and inadequate."  677 F. Supp. at 785 (citing *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir.1980)).  The number of errors in this case certainly suggests an appearance of bias.  The mere appearance of bias is as much a reason to remand as any proof of actual bias.  As the Third Circuit observed during a similar case

involving social security benefits and ALJ bias: "[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Grant v. Shalala*, 989 F.2d 1332, 1345 (3d Cir. 1993) (quoting *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968)); *see also SEC v. Antar*, 71 F.3d 97, 101 (3d Cir. 1995) ("Because we seek to protect the public's confidence in the judiciary, our inquiry focuses not on whether the judge actually harbored subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias."). Thus, in order to cure any appearance of bias on the part of the ALJ, the Court remands this case to be heard by another ALJ.

The Commissioner contends that while "some of the ALJ's comments were indeed inappropriate, she maintains that the ALJ's decision was correctly decided on the merits of the claim, and the inappropriate remarks did not prejudice the ALJ or result in an unfair hearing." (Def's Br. at 8.) In so arguing, the Commissioner notes that "the decision did not reference the use of alcohol, and alcoholism was not a factor in this case." (*Id.*) This argument fails, however, for two reasons. First, as was described above, the Court does not find an appearance of bias solely from the ALJ's remarks regarding alcohol. An appearance of bias also arises from the ALJ's remarks regarding Kasubinski's arrest record and by the ALJ's own medical suggestions. Second, the controlling law does not require that the ALJ's written decision exhibit an appearance of bias for a court to remand a claim for disability benefits due to concerns about the ALJ's objectivity. *See Grant v. Comm'r*, *Soc. Sec. Admin.*, 111 F. Supp. 2d 556, 566 (M.D. Pa. 2000). A reviewing court need only find the existence of an appearance of bias that rendered the ALJ unable to fulfill his duty to fully develop the record and decide the matter impartially. 20

C.F.R. §§ 404.940, 416.1440; *Grant*, 989 F.2d at 1345 (quoting *Commonwealth Coatings Corp.*, 393 U.S. at 150 ).

Even though the Commissioner has not raised a waiver argument, the Court notes that Kasubinski's failure to make a bias objection during the hearing does not preclude this Court from analyzing the issue.[3]  Indeed, the Court will not allow such a technicality to interfere with its duty to rectify the appearance of impropriety.  More importantly, in the instant case, Kasubinski raised objections on the grounds of bias that were considered by the Appeals Council, thus giving the Social Security Administration a chance to correct the situation internally either by immediately remanding the case to another ALJ or by declaring that Kasubinski waived the objection by failing to raise it at the hearing.  Instead, the Appeals Council acknowledged that the ALJ made "several inappropriate remarks," and concluded that the decision nonetheless reflected "a fair evaluation of the record."  (R. at 5.)  Because the Appeals Council considered the objections on the grounds of ALJ bias, the Court also considers Kasubinski's objections on the grounds of bias and finds, for the reasons set forth above, that the appearance of bias in this case warrants a remand to another ALJ.

V.

For the foregoing reasons, the Court finds that Kasubinski is entitled to a new hearing before another ALJ.  In light of the Court's disposition of this case, the Court need not reach the a conclusion on whether the Commissioner's decision on the merits of the disability claim is

---

[3] Such an argument would be based on 20 C.F.R. §§ 404.940, 416.1440, which states:  "If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity."  After that, an attorney may "present [his or her] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge."  *Id.*

supported by the substantial evidence in the record.  Accordingly, the Court vacates the decision

of the Commissioner and remands the case for further proceedings consistent with this opinion.

An appropriate order accompanies this opinion.

                                                /s/ Joel A. Pisano
                                                JOEL A. PISANO, U.S.D.J.

Date:   August 7, 2007